Case of In Re Whittaker, Appeal 1343. Mr. Whittaker, good morning to you. Good morning, Your Honor. Please proceed. This is a case that's come out of the Patent Office. Mr. Whittaker has an invention which may be a little bit simpler than the one you were just discussing. It's a sweeper. And it has, instead of brushes, it has a rotating cylinder. And this cylinder has a number of grooves in it, or dimples, which when rotated over carpet will loosen the dirt, etc., etc., and bring it to the surface and can be vacuumed up. The Patent Office found... Do you agree with the Patent Office rule that if the prior art sweepers are capable of operating in accordance with the claims of your sweeper assembly, that that's adequate to prove anticipation? Well, they didn't prove that they could do that. Well, as I recall, the Patent Office made a finding that it was possible for the two prior art sweeper assemblies to be used in such a way that they would meet the claim terms and thereby anticipate the limitation of contact with the surfaces between the carpet and the surfaces of the recess. Well, they'd have to take the brushes off. No, they said you'd just have to press down a little harder and then the fibers of the carpet would brush against the surfaces of the recess and that would meet the claim limitations. It's very interesting speculation, but you have at the same time the rotation of the brushes, which does not permit the rug from coming up and making contact. Well, why not? The brushes don't cover the entire surface of the roller and if you applied a little bit of downward force on the apparatus, it seems like the fibers very definitely would be rubbing against the cylinder itself and rubbing against the inner surfaces of the recesses. Well, I haven't been able to demonstrate that, so maybe the Patent Office could do it, but I don't think that there's any way that can occur because if this is rotating at a relatively speed that most would rotate in the prior art, it's not going to impinge. Well, see, that's why I'm asking about what the right test is. If in normal use the two prior art apparatuses had to meet the claim limitation, then you might have a much stronger position, but the Patent Office said it's not normal use. Is it possible for the prior art sweepers to be operated in such a way as to anticipate your claim limitations, particularly the one about contacting between the carpet and the inner surfaces of the recesses? And they answered that question, yes, and on that basis they found anticipation. It seems to me in order to prevail here, you have to persuade us that the is it possible test is not permissible and that the test has to be, well, what about in normal use? While you're answering that, clarify... Well, let him answer that. Well, let's back up. Anticipation. First, this case below was on whether or not there was any structure that differentiated between the prior art. I believe without the functional language argument, it is different because all of the board said was, and I quote, structurally there's no difference between the claimed invention and Mertz and Cohen. Well, there is structural difference. Well, the brushes are added, but since it's a comprising claim, that doesn't save you. Why doesn't it save you? Because if the anticipating reference meets all the claim limitations, the fact that it has additional structures doesn't defeat anticipation. So if we make an invention that eliminates parts in a device, that's not invention because the other old way of doing it still works and does the same thing we do. Well, see, this is where I want to move you one step along, and I may misunderstand it because I didn't think the board was simply saying, maybe they were saying that plus other things, but I didn't think they stopped with saying it's possible to make it work the same way Mertz and Cohen work. I thought the board was saying it's inherently necessary that your invention will behave just the way those others behave, that it's inherent, perhaps let me flip it the other way, it's inherent in Mertz and Cohen that when their sweeper runs, they're going to get the same effect as your claimed invention would get. Well, they could say that, but there's no evidence in any art that shows that. If that were the case, why have the brushes on? The brushes have been on these things for hundreds of years, and all of a sudden they're not on, but it was inherent all this time. I don't think so, because the brushes, as they come around, push the carpet down. They don't draw it up in. That may be true, but that's with respect to the function of the brushes. What we're talking about is the function of the roller and the slots in the roller. But the roller only supports brushes. It's removed from the carpet as it goes across. Well, that depends on the depth of the carpet and whether there's any downward pressure, which goes back to the patent office saying that it could be anticipating it with very high pile carpet and or with downward pressure on the apparatus. Cohen has wheels on it. You can't push it down any further. We don't know what Mertz has, because all he is teaching us is that he's got a cylinder that he puts bristles on, and his invention was to put a slot in so you could cut the residue that you get off of it. Everybody agrees that the slots in the prior art patents were for a different purpose. That can't be disputed, but they can still inherently anticipate if they function in a certain way. It seems like the dispute is, do the two prior art devices or the two prior art patents show this functionality or not? Well, they don't show it. They don't teach it. They don't make it up. They don't obviate it. It is only the examiner's postulate, if you did these things, she conceived that maybe some of the carpet would get up there, but it's obviously not all of it can get up there. But your claim is that if you have a roller with this groove in it... Multiple grooves. Multiple grooves. Yes. If you have a roller with these multiple grooves, this is the way you will get the carpet to behave. If I understand, and we'll leave it to the government to clarify for me, because I hardly understand anything these days, but if I understand their argument, they're saying, well, these other inventions, these other patents, have rollers pretty much like yours, so they must have the same effect. Whether they have brushes or whether they have sticks or whatever they have else added to them, they're a roller with a groove in it and must have the same effect, because you're claiming that a roller with a groove in it has a certain effect, right? It's a roller with a groove, multiple grooves or recesses, but it does not have bristles. That's true. Everybody concedes that. Well, but nobody acts on it. But your claim doesn't exclude brushes. We don't exclude a lot of things, but brushes... But that's a problem, is it not? No, it's not a problem. You're arguing that the invention is that it's a roller with grooves and that's all. It doesn't need brushes. It works with just the grooves. That's correct. But the claim is written as a comprising claim. It's open-ended and you could... It certainly reads on a roller that has grooves and brushes and other things. I would disagree that it reads on that and that just because it's comprising can be incorporated into the claimant basis of prior art. The bristles have a separate and unique function from what that roller does. And to say that you can include that in by saying, well, bristles do the same thing. Nobody's saying you can include it in. The question here is, after the Patent Office established a prima facie case concluding that because the prior art showed a similar cylinder with similar grooves and therefore it concluded that whatever functionality is within that structure must also apply to the claim structure, then it was your burden to come back and say, no, no, no. Ours don't work that way. No, we did. The problem that I see and the problem that I think you have is that you came back with all kinds of arguments, but they're all attorney arguments. There's no declaration, correct? There's no evidence. There's no declaration. There's no experimentation. There's nothing but attorney argument. Don't you need more? Don't you need some sort of evidence, some showing? Because how else are we to know, for example, that, well, these bristles, they stand up and they keep the grooves apart from the carpet, therefore they're ineffective. We can all surmise whether it does or does not, but this is all about evidence. But there was no evidence on the part of the Patent Office. So does it come down to who needed to do the experiment? You're basically saying the Patent Office couldn't speculate. They had to do experiments to show that the limitation about the recesses having a contacting surface that contacts a soft surface to be cleaned, whereas they're basically saying, no, we had enough to shift the burden on you. Therefore, you would have had to do the experiment to disprove it. Is that the real dispute here? If you take that there's no. . . Can I get a yes or no answer on that? I don't think that's the real dispute. I don't expect them to do any testing. Well, then why do you resist the suggestion of Judge Lynn that in order to overcome the prima facie case of anticipation, you had to do some testing that would show that it didn't happen the way your claim limitation calls out? I'm not sure how you do negative testing with theirs to start with. Maybe they can give us a test protocol. But what I'm suggesting is that we never got past the structure. We started putting all this functional language in because the Patent Office said, we haven't found any of these sweepers without having any bristles on them. So why don't you put some functional language in that says it compresses and decompresses. It does this or it doesn't do that, which is where we went. But at the end of the day, the structure is different because there are no bristles on it. And you were prepared to make an amendment to that effect, is that right? The amendment was another amendment. Yes, that's true. But it's smooth. Continuous smooth. And it would take them off. And they were satisfied with that. But the point is, it's a rigid roller. It is not a roller that has compliable bristles on it. So it already distinguishes between what was in the prior art and what we have. Of course, they say, well, the prior art rollers were rigid too. Yes, they had bristles sticking out from the rigid surface. But the surface of the roller was rigid. That's right. But it's not the roller that's contacting the carpet. It is the bristles. Well, that's what you say. They say it does contact. Well, they can say that, but they have absolutely no evidence in any art that suggests otherwise. And 100 years of art says you have to have bristles. So all of a sudden, we don't have bristles. And it's inherent that the art for all of these years functioned just like this did. You know, if it were a 103 rejection, you would have a powerful argument, at least in my view, by saying all the prior art taught away from a bare roller. It taught bristles or the equivalent. But the trouble is, it's not a 103 rejection. It's a 102 rejection. So they're saying these two prior art patents, Mertes and Cohen, show a rigid roller with slots in it, and that, therefore, the structure is the same as your claimed roller, and so is the function. Well, that's where we disagree. Okay. Thank you. All right, let's hear from the government. Ms. Gongola. Good morning, Your Honors. May it please the Court. So I'd like to begin by talking about the functional limitations. Pull the microphone down just a little bit so we're sure we pick up all of your... Thank you, Mr. Walker. We don't want to lose the word. Thank you. I'll start by talking about the functional limitations. So here's what happened. The office made its prima facie anticipation case on two grounds. First, that the prior art taught the exact same structure as is claimed by Whitaker's carpet cleaning apparatus, the roller and the rotatable support means. On top of that, though, that alone is enough to make a prima facie anticipation case under Schreiber. But added to that, the office added technical reasoning to explain why the art would inherently function exactly like the claim limitations. The contacting surface of the recess would meet the soft surface to be cleaned, and then the contacting surface would alternatingly compress and decompress the carpet when the roller is ran over the carpet. And the Court's picked up on the two reasons. One, if you have high pile of the carpet, the piling would necessarily, inherently, capable, whatever words you want to use, it would contact the surface of the roller as well as the contacting surface of the recess. But isn't that your assumption? What's the evidence to support that? There is no actual evidence in the record because the prior art expressly talks about the bristle sweeping. But that's when the burden shifts under the case law to the applicant to teach the office that no, it's not possible. The prior art will not inherently function that way. And unfortunately, applicant Whitaker has failed his burden. Is it sufficient for the Patent Office simply to conclude that those grooves inherently possess that function with no showing whatsoever of any underlying fact? Yes, based upon the structural similarity. In Schreiber, for example, there the claimed invention was drawn to a popcorn dispenser that was conical shaped. It had a larger end that tapered to a smaller end. And the prior art cited against it was an oil can dispenser with roughly the same shape. And this Court said, based upon the structural similarity, that a prima facie case of anticipation was made And then the burden shifted to show, the burden shifted to the applicant to show that the prior art did not function the same way that the popcorn dispenser functioned. That it kind of caused the popcorn to jam at the end and only allow a few kernels at a time to come out of the dispenser when you would shake it. And that's exactly the same protocol that the office followed here. The only time I ever heard of an oil can popping popcorn that I suppose is possible. Well, I do think the prior art was also used in Schreiber for other purposes, one of which was to dispense oil. But Ms. Gongola, there would be a problem if the Patent Office options included just a conclusion by the examiner that I say so and therefore it's so. I mean, if it went that far, that would certainly be problematic. That's absolutely correct. So then we have to somehow identify some line where the Patent Office examiner has enough reason for finding inherent functionality as opposed to just saying so. That's correct. So can you help us figure out where that tipping point is? Well, the line can be drawn with a similar structure. When the prior art has similar or identical structure, it can be presumed that it will inherently have the same claimed functionality. And that's the test that was applied here. It's the test that was applied in Schreiber. The test is satisfied. So that shifted the burden to the applicant. Let me ask you sort of a geometric or spatial question. If we contemplate very high pile soft carpet and we imagine the claimed invention running across that carpet, it is probably true that the very top tip of that soft high pile carpet would reach up to the roller and would reach up inside the grooves as required by the claim. But the essential requirement in terms of functionality seems to be compression and decompression. So is it really fair to say that the entire carpet has been compressed and then decompressed if all that's happening is the very tip top of a, let's say, two-inch vertical fiber is reaching up into the recess of the roller? Is it really compressing the carpet that the tip top gets bent one micron by reaching up into that recess and contacting the inner surface of the recess? Yes, it is, Your Honor, for two reasons. First, the claim doesn't require that the compression be to any degree. It says compress. Now, does that have to fold in half, smash on the floor? There's no requirement in the claim. And second, the office gives claims their broadest reasonable interpretation. So under that interpretation, compress could be just grazed, the fibers at the top of that two-inch pile, ever so slightly, and that would meet the limitation. But isn't the functionality to make the little pieces of dirt jump up out of the carpet into the sweeper? Yes, that's my understanding. So when we talk about compression and decompression, it can't be that the slightest amount of compression or decompression is adequate because the slightest amount probably wouldn't be able to create the mechanical action of the little pieces of dirt jumping upward against the force of gravity and then being carried away by the roller. Perhaps not for the dirt that's at the very bottom surface of the carpet at its core, but the dirt that's lying along the surface, any amount of agitation coupled with a suctioning force across the top of the floor would be enough to sweep up the dirt. And the actual invention, the application contemplates running the sweeper multiple times across the surface of the floor so that if all the dirt's not picked up on the first running of the sweeper, you can run it again. You mentioned a minute ago that the patent office doesn't just infer some functionality out of thin air, that the trigger or the metric to use when that's proper to establish a prima facie case is where there's some structural identity or structural similarity. Yes, that's correct. Now, in making that determination, is it proper to ignore related structure that is contained in a device in a piece of prior art, or does all of the structure need to be considered? For example, in this case, if we look at the prior art references, you could say, well, all right, they have a cylinder, they have grooves, therefore, they must inherently function the same way. But those prior art structures also have other things, bristles. And let's assume hypothetically that the bristles were substantial bristles described in the patent as being unyielding and rigid and two inches long that bordered all of the grooves on both sides, where anyone could see that there is no way the carpet would ever come into contact with that groove. The only function is maybe that you can put a knife in there and cut out fibers, okay? So I take it it's not enough just to say, well, there's structural similarity because that reference does have a cylinder, that reference does have grooves. That's enough. Burden shifts. You're correct. In your hypothetical instance, the trigger point is the similar structure. The similar structure meaning the totality of the structure. Correct. Not just a dissected structure, only looking at what you want to look at. Correct. We're not picking and choosing what the art's teaching. In your hypothetical, I don't believe, although I'm not an examiner, but the office wouldn't make an anticipation rejection in that case because if the bristles were like nails, it would physically prevent the roller from touching. They would never bend. You'd never achieve the alternating compression and decompression. So I think you would agree with me then that the Patent Office did have to at least take into account the fact that there were bristles. Correct. Separate and apart from the question of whether the claim is an open, comprising claim or not, the question is whether there's a prima facie showing that would shift the burden to the applicant. That's correct. And in this instance, the prior art teaches in the Cohen reference at page 1005 of the record that the bristles are hair-like or polymer. So we're not dealing with the hypothetical situation of having nails. We're dealing with soft bristles that presumably would be a malleable force. Is it also important that the bristles in Cohen or Mertes were widely spaced apart from one another so that in the large area in between rows of bristles, the carpet could reach up and touch the cylinder and invade the recesses? That's certainly a factor. Neither of the prior art references, all they teach with respect to the bristles, is that the bristles sweep the dirt. They don't say that the bristles are the only parts of the vacuum cleaner that contact the surface to be cleaned. They don't say they block the roller from being cleaned. And as you point out, there are large open spaces on the surface of the rollers that presumably they would contact and then right around the bristles, when the bristles fold over, that part of the roller would also contact. But those rollers are in operation. They're rotating at some speed so that in a sense the carpet sees a continuous, albeit vibrating, repetition of the bristles coming into contact. To me, it's almost like if you can envision a three-bladed propeller on an airplane engine, and you could say, oh, there's a lot of wide spaces, and you could reach your hand right in there and touch the hub. You could do that when the engine is off. But I don't think you could do it well when the propeller is running. Isn't there something to that here? There absolutely is. And that's why the burden shifts to the applicant in this case. If the applicant would have done some testing, for example, or put in a declaration, like the applicant in Schreiber did, there the applicant made an oil can assembly. Well, he tried to make it, and he tried to test it, and he said in a declaration that he gave to the office, well, when I built this assembly and I shook it, I couldn't get any popcorn to come out. Well, the office didn't find that persuasive because there was a failure of detail in the declaration. But here we didn't have any effort made by the applicant to take one of the two prior art vacuum cleaners, make it according to the enabling disclosure in the drawings, and test it. But I want to back up a bit again to the burden shift, because we had an earlier discussion, and I think we're in agreement that it's not just structural similarity in sort of isolation that the office does need to take into account. Right, there's a reasonableness. A reasonableness. Does the office not have to take into account sort of how the structure would be used in operation? Again, to use my hypothetical, is the comparison with the propeller in operation, or with the engine off and the propeller standing still? Because if in operation the cylinder is rotating sufficiently fast that it cannot be said that those grooves ever come into direct contact, then maybe the burden doesn't shift. And if that would be the case, but the claims do not require any specific revolution of the roller, so we don't know how fast it's going to be operating to be able to tell. Again, that's why we can't do the testing at the patent office. We require the applicant to do the testing. And if the applicant would come back with evidence showing it's a physical impossibility due to the speed with which the roller runs, that there's no way for contact to be made, then we would withdraw the anticipation rejection. Perhaps the office might require a comparison of the DNA of the roller with that of the prior art. I would hope not. I would hope not. The last point that... But before you go to your next point, as I recall, the examiner suggested a functional limitation be added, and they added it. And then the examiner still wasn't persuaded and suggested a second possible amendment. And the prosecuting attorney, Mr. Wettig, agreed and submitted that second examiner-suggested amendment, and then the examiner refused to enter it and ended the case. Why is that proper? Why shouldn't the examiner have accepted the amendment he himself drafted, and that might have avoided this whole problem of the prima facie case? Well, the problem with the second amendment is its timeliness. The applicant attempted to enter the amendment after a final rejection. But so what? Well, the examiner explained the reasons for not entering the amendment is because it would require the examiner to make a new search. Now, if we look at the history, the examiner actually suggested after the very first office action, why don't you amend the claims in a certain way? And with all due respect, it wasn't a functional limitation. The examiner was suggesting a structural limitation to take the claim outside of the bristles of the prior art by saying that the surface of the roller was continuous, suggesting no bristles. And the applicant declined to do that. The applicant instead chose to use functional language. And they do so at a risk because of this whole burden shifting. So then final rejection hits. The examiner has an interview. And at that point, again, for the second time, the examiner suggests. So they were too late. They needed to have accepted the examiner's suggestion about a smooth, continuous roller surface before the final rejection when it was originally suggested to them. So when they tried to do it after the final rejection, it was just too late. It was too late. That's correct because it had been the same art being cited to them across all of the office actions. If we affirm the Board on this, can he go back and reapply with the additional amendment or is he now bound by race judicata doctrine that he's dead meat or slow roller, however you want to describe it? Well, this case would certainly end. But if he would like to file another application, putting in initially his very first claim to have a bristle-less roller, he could do that and pursue a new application before the office. Could he do that as a continuation so as to preserve his right to the filing date? Not at this point in time. He could have done that before he chose to file his appeal. He could have filed an RCE or a continuation then. But as soon as he chose to file this appeal, that extinguished his rights to keep this application. Well, might he have been motivated to appeal rather than file a continuation because of the then applicable limits on continuation applications? No, Your Honor. The claims and continuations rules that the office had considered promulgating at one point in time would not have affected his application. And he's never said that in the record. That's why he chose to appeal and not pursue the continuation. All right, thank you. Mr. Weddick, some rebuttal? I don't really have anything to add to what's already been said. I think that our case stands on the fact that the application, as it was filed, as the claims were prepared and put before the office, there are structural differences between the prior art. This was truly an invention that was different. It took out of the sweeper art bristles. The added claim language just became ambiguous from the standpoint, it's continuous, what does continuous mean? The rollers are continuous underneath the bristles. It didn't help anything. I think the structure was what it was. I think that the prior art does not anticipate it. It's like coming in and saying, well, geez, I found this spline in a transmission that has grooves in it. I guess we could put that in the sweeper and make it work. Just taking these off was so different to those skilled in the art that taking what was left and saying it worked the same way was not something that we were going to do. So basically you're critical of the extent to which the patent office is relying on inherency, inherent functions. I am, because if they had any evidence of that, that would be one thing. But to speculate that, well, gee, it's in there, it must happen the same way, because you've proved it happens, and then send us back to the lab and say, okay, now how do we prove it doesn't happen? It's proving a negative. It could have iridium in it and be radiation, and it could kill all the bugs, too, but I can't prove that. It's disproof. Mr. Webber, just before you sit down, just as an aside, a follow-up on the discussion we just had, is recognizing that if we affirm that your right to proceed with a continuation may now be foreclosed, is there any reason why you might not have taken that route instead of filing an appeal, simplifying the continuation? Well, this is a continuation of a continuation. I mean, there's been a number of them. Were the previous rules, did they have some effect? No, they had no effect on it. They did not? They did not. All right, thank you. All right, the case is submitted. Thank you. All rise.